# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMY H., | ) |
|                Plaintiff, | ) |
| v. | ) No. 17 CV 4559 |
| NANCY A. BERRYHILL, | ) Magistrate Judge Jeffrey Cummings |
| Commissioner of Social Security, | ) |
|                Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Amy H. ("Claimant")[1] brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") that denied Claimant's claim for Disability Insurance Benefits under 42 U.S.C. §§416(i) and 423(d) of the Social Security Act ("the Act"). The Commissioner brings a cross-motion for summary judgment seeking to uphold its decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§405(g) and 138(c)(3). For the reasons stated below, Claimant's motion for summary judgment to reverse the final decision of the Commissioner [12] is granted, and the Commissioner's motion for summary judgment [20] is denied.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, in the caption, only plaintiff's first name shall be listed. Thereafter, we shall refer to Amy H. as the plaintiff or Claimant.

# I. BACKGROUND

## A. Procedural History

On July 2, 2013, Claimant filed a Title II Disability Insurance Benefits ("DIBs") application alleging a disability onset date of February 16, 2009. (R. 28, 171.) Her claim was denied initially on October 25, 2013, and again upon reconsideration on August 6, 2014. (R. 101, 103-06.) Claimant filed a hearing request on September 15, 2014 pursuant to 20 C.F.R. §404.929 *et seq*. (R. 116-17.) On April 19, 2016, the ALJ issued a written decision denying Claimant's claims for DIBs. (R. 28-41.) Claimant then requested review by the Appeals Council. (R. 21-24.) On April 21, 2017, the Appeals Council denied her request for review, at which time the ALJ's decision became the final decision of the Commissioner. (R. 1–5); *Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Claimant subsequently filed this action in the District Court.

## B. Medical Evidence In The Administrative Record

Claimant seeks DIBs for migraine headaches, depression, anxiety, and stress. (R. 80.) The administrative record contains the following medical evidence that bears on Claimant's claim:

### 1. Evidence from Claimant's Treating Psychiatrist

Around 2007, Claimant began seeing psychiatrist, Dr. Jonathan Gamze approximately every two months to receive treatment for anxiety, migraines, and depression. (R. 191, 267-77, 316-29.) Dr. Gamze completed a mental residual functional capacity statement for Claimant on February 25, 2016. (R. 331-34.) He listed Claimant's Axis I diagnosis as persistent depression and identified opioid dependence. (R. 331.) Under the sustained concentration and memory category, Dr. Gamze opined that for more than 15% of the time, Claimant would be unable to

complete a normal workday and workweek without interruption from psychological based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 331-32.) Dr. Gamze also opined that Claimant would be Category IV[2] with respect to traveling to unfamiliar places or using public transportation. (R. 333.) Dr. Gamze stated that Claimant would be off-task more than 30% of an eight-hour workday and would likely be absent more than six days per month as a result of her impairments. (*Id*.) He opined that Claimant was unable to obtain and retain work in a competitive work environment due to her depression. (R. 334.)

During the more than nine years that Dr. Gamze treated Claimant, he prepared dozens of pages of treatment and progress notes. (R. 267-77, 289-90, 301-02, 314-29.) Dr. Gamze's treatment and progress notes presumably provide foundational support for his opinions that are referenced above. Unfortunately, as discussed in further detail below, all of Dr. Gamze's handwritten treatment and progress notes during the relevant time period are illegible. (*Id.*) This fact is acknowledged by the ALJ and both parties.

### 2. Evidence from Agency Consultants

On September 30, 2013, Dr. Joan Hakimi performed a psychological consultative examination of Claimant. (R. 279-83.) Dr. Hakimi diagnosed Claimant with dysthymic disorder, opioid dependence, and migraines. (R. 282.) Also on September 30, 2013, Dr. Roopa Karri provided an internal medicine consultative examination. (R. 285-88.) Dr. Karri documented the following impressions: 1) history of menstrual migraines that were getting better with time; and 2) history of depression, anxiety, and prescription drug abuse. (R. 288.) Finally, on July 25, 2014, Dr. Michael Ostrowki performed a secondary mental status evaluation on

---

[2] Defined as "[p]recludes performance for 15% or more of an 8-hour work day." (R. 331.)

3

Claimant. (R. 309-13.) Dr. Ostrowski diagnosed Claimant with depression due to medical condition (migraines), opioid addiction (Vicodin) in remission, generalized anxiety, and anti-social behavior (criminal, forgery). (R. 313.)

### C. Evidence from Claimant's Testimony

At the February 26, 2016 hearing, Claimant, who has a master's degree in industrial and organizational psychology, testified that she has not worked since February of 2009. (R. 52-53.) She left her last job as a consultant on her own accord after missing too much work due to anxiety and migraines. (R. 53.) Claimant testified that the combination of stress, anxiety, and migraines cause her to miss a lot of work and create difficulties concentrating, working in high stress jobs, and working with other employees. (R. 63.) Claimant's depression, concentration and migraines had gotten worse over the six months preceding the hearing even though she had not recently worked in a high stress job. (*Id.*) Prior to the past six months, Claimant had headaches three to four times a month, and her headaches are treated by her psychiatrist, Dr. Gamze. (R. 64.)

Claimant has had issues with driving for a while and she previously had to force herself to drive to nearby places. (R. 65.) Claimant is capable of feeding the cat, emptying the dishwasher, and taking out the garbage. (R. 66.) She does not visit with friends or talk to people on the phone. (R. 68.) She exercised three days a week in 2014 even though her anxiety, depression and migraines still interfered. (R. 69.) She testified that she believes she would have problems with attendance at a job because her anxiety causes migraines, which then causes her to miss work. (R. 68-69.)

4

### D. Evidence from the Vocational Expert's Testimony

A vocational expert ("VE") offered testimony at the hearing. (R. 70-78.) She described Claimant's previous work as fitting within the following job titles: new accounts representative (skilled, light work); accounting clerk (skilled, sedentary work); sales rep (semi-skilled, light work); retail store management (skilled, light work); academic counselor (skilled, sedentary work); administrative assistant (skilled, sedentary/light work); and receptionist (semi-skilled, sedentary work). (R. 71-73.)

The ALJ then asked the VE to consider an individual matching the Claimant's vocational profile who can perform work at all exertional levels but is limited to simple, routine, and repetitive tasks involving: (a) a work environment free of fast paced production requirements; (b) only simple work-related decisions with few, in any, workplace changes; and (c) only occasional supervision. (R. 73.) The VE testified that such an individual could work as a cleaner-industrial (1,000,000 jobs nationally; 47,000 jobs in Illinois); bagger-retail or trade (672,000 jobs nationally; 8,000 in Illinois); or dishwasher (352,000 jobs nationally; 13,000 jobs in Illinois). (R. 73-74.)

The ALJ then added to the hypothetical description to consider a person who also could have only occasional interaction with the public and with coworkers. (R. 74.) The VE testified that the bagger may not remain as an option based on the proximity to the general public but that the other two options remained. (R. 74-75.) The VE also testified that Claimant could work as a cleaner-housekeeping and maid (1,000,000 jobs nationally; 36,000 in Illinois). (R. 75.)

## II. LEGAL ANALYSIS

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(b). Consequently, this Court will affirm the ALJ's decision if it is supported by substantial evidence. *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983).

This Court must consider the entire administrative record, but it will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Court will focus on whether the ALJ has articulated "an accurate and logical bridge" from the evidence to his/her conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.' " *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam), *quoting Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted). This requirement is designed to allow a reviewing

court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

**B.     The Standard For Proof Of Disability Under The Social Security Act**

In order to qualify for DIBs, a claimant must be "disabled" under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176. Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id*. at 886.

### C. The ALJ's Decision

The ALJ applied the five-step analysis required by the Act. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity during the period from her alleged onset date of February 16, 2009 through September 30, 2014, the last date she was insured. (R. 30.) At step two, the ALJ found Claimant suffered from the following severe impairments: anxiety disorder, affective disorder, and substance abuse (opioid, in remission). (*Id*.) At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 31-33.) At step four, the ALJ determined that Claimant had the RFC to perform a full range of work at all exertional levels but with nonexertional limitations. (R. 33.) The Claimant was limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple work related decisions, with few, if any, work place changes, occasional interaction with the public and co-workers, and occasional supervision. (R. 33-38.) The ALJ found that Claimant was unable to perform any past relevant work. (R. 38.)

Lastly, at step five, the ALJ found that through the date last insured, given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers that Claimant could perform, such as cleaner (industrial), cleaner (housekeeping), or dishwasher. (R. 39-40.) Therefore, the ALJ found that Claimant had not been under a disability from February 16, 2009 through September 30, 2014. (R. 40.)

### D. The Parties' Arguments In Support Of Their Respective Motions For Summary Judgment

In her motion for summary judgment, Claimant asserts a number of arguments pertaining to the ALJ's consideration of the opinions provided by her treating provider, Dr. Gamze.

According to Claimant, "[t]he ALJ's most significant error in assessing [the] medical opinion evidence . . . [wa]s her failure to recontact Plaintiff's treating physician (Dr. Gamze) for clarification of his illegible treatment notes." (Dkt. 13, at 13.) This overarching error lead the ALJ to make a number of other missteps. In particular, Claimant argues that (1) the ALJ's determination that Claimant's severe mental impairments do not meet listing level severity is premised upon an unsupported paragraph B analysis[3]; (2) the ALJ's RFC assessment failed to account for Claimant's limitations in concentration, persistence, and pace; (3) the ALJ's finding that Claimant's allegations are not entirely consistent with the evidence of record is unsupportable; (4) the ALJ's assessment of opinion evidence is erroneous as she disregarded Social Security regulations and failed to consider prescribed factors when she rejected the opinion from the treating physician; and (5) the ALJ's finding that Claimant can perform other available work is based on a flawed evaluation of the testimony from the vocational expert.

In her motion for summary judgment, the Commissioner does not dispute that Dr. Gamze's handwritten treatment notes are illegible. Instead, the Commissioner asserts that the ALJ had no duty to recontact Dr. Gamze for clarification or further explanation because the evidence as a whole was adequate to enable the ALJ to determine whether the Claimant is disabled. (Dkt. 21, at 2.) The Commissioner further asserts that Claimant had the burden of

---

[3] Under Listings 12.04 or 12.06, a claimant must meet the "Paragraph A" criteria, and then also either the "Paragraph B" or "Paragraph C" criteria of that listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Paragraph B criteria requires the presence of at least two of the following for a claimant to be considered disabled: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Larson v. Astrue,* 615 F.3d 744, 748 (7th Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpart P., App. 1, §12.04(B)). In September 2016, the SSA adopted new rules for agency review of the criteria in the listings for evaluating claims involving mental disorders. *See* 81 Fed. Reg. 66137 (Sept. 26, 2016). Because the new rules apply only to disability applications filed on or after January 17, 2017, they are not applicable in this case. *See id.*

supplying adequate records and evidence to prove her claim of disability and that the ALJ could have "reasonably assume[d] that there was no need to develop the record further" given Claimant's counsel's statement at the hearing that he had no objection to the evidence and that the record was complete. (Dkt. 21, at 3.) As to the merits, the Commissioner argues that: (1) the ALJ properly gave little weight to Dr. Gamze's opinion concerning Claimant's RFC; (2) the ALJ properly evaluated Claimant's subjective complaints; and (3) substantial evidence supports the ALJ's Step 5 analysis.

> **E. A Remand Is Required Because The Information In This Record Is Insufficient To Make A Determination As To Whether The Claimant Is Disabled.**
>
> **1. The ALJ had a duty to contact Claimant's sole treating psychiatrist for clarification and supplementation because his handwritten treatment notes are illegible.**

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . [and] [t]his duty exists even when the claimant is represented by counsel." *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted); *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009); *Smith v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978). "An ALJ's duty to develop the record further is triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001). For example, "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Simila v. Astrue,* 573 F.3d 503, 516 (7th Cir. 2009), *quoting Barnett v. Barnhart,* 381 F.3d 664, 669 (7th Cir. 2004); *Moore v. Colvin,* 743 F.3d 1118, 1127 (7th Cir. 2014) ("If the ALJ was unable to discern the basis for the treating physician's determination, then the proper course would have been to solicit

additional information from [the physician]"). "ALJs may [also] contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability." *Skinner v. Astrue,* 478 F.3d 836, 843 (7th Cir. 2007).

It is well-settled that the ALJ's failure to fulfill his/her duty to fully and fairly develop the record "will authorize remand for further hearing." *Smith,* 587 F.2d at 860. "The responsibility to see that this duty is fulfilled belongs entirely to the ALJ . . . [and] is not part of the claimant's burden." *Williams v. Astrue,* No. ED CV 08-549-PLA, 2010 WL 431432, at *7 (C.D.Cal. Feb. 1, 2010); *Davis v. Colvin,* No. CV 13-03082 LB, 2014 WL 4954057, at *12 (N.D.Cal. Sept. 30, 2014) (same). Consequently, a remand may be required to further develop the record when the record is inadequate to make a determination as to whether the claimant is disabled even where (as here) the claimant's attorney indicates that the record is complete. *See Chiccino v. Berryhill,* No. 3:17 CV 05713-TLF, 2018 WL 3769084, at *2 (W.D.Wash. Aug. 9, 2018) ("The ALJ conducts a non-adversarial hearing and therefore, on judicial review, appellate rules of waiver and default concerning evidence that was not placed into the record may not be appropriate").

In this case, Claimant and the Commissioner agree that the dozens of pages of the handwritten treatment notes of Dr. Gamze (Claimant's sole treating psychiatrist) are illegible. The ALJ likewise repeatedly referenced the illegible nature of Dr. Gamze's notes in the course of her analysis of the Dr. Gamze's opinions and the medical record. (R. 31, 36, 38.) Courts have held that "[w]here the medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material […] warrant[s] a remand for clarification and supplementation." *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir. 1975); *Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) (ordering remand for further development of the record where a significant portion of the medical records was "illegible because of poor copy quality or handwriting") (citing cases);

*Koppers v. Colvin*, No. 15 CV 5471, 2016 WL 3136916, at *4 (N.D.Ill. June 6, 2016) (where a doctor's notes were largely illegible, finding that the ALJ had a duty on remand to recontact the doctor to "request legible copies of his notes . . . or an explanation of the findings contained therein"); *Russell v. Astrue,* No. 09 CV 5702, 2012 WL 645937, at *14 (N.D.Ill. Feb. 24, 2012) (where records of claimant's treating physician were "largely illegible", the ALJ had a duty to follow up with the physician to "more thoroughly explain his conclusions"); *Torres v. Colvin*, No. 13 CV 125-PRC, 2014 WL 4587153, at *15 (N.D.Ind. Sept. 15, 2014) (finding that the ALJ should have contacted the claimant's treating physician for clarification of the physician's difficult-to-read treatment records).

Here, a remand is warranted for further development of the record because Dr. Gamze's opinions treatment notes are "crucial" to Claimant's claim. The importance of his treatment notes is highlighted by an examination of several unsupported findings within the ALJ's decision. For example, the ALJ found that: (1) Dr. Gamze's RFC limitations assessment "cannot be supported by treatment notes" (R. 38); (2) "[t]he medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination" (R. 31); and (3) although Claimant testified that she treated by Dr. Gamze for headaches, there is no medical evidence in the record regarding any treatment that she received for headaches (R. 30-31). It is unclear, however, how the ALJ could have made these findings given that Dr. Gamze's treatment notes were illegible. *See Moomy v. Colvin,* 106 F.Supp.3d 1222, 1226 (D.Colo. 2015) (ordering remand after finding it "unclear" how the ALJ could have arrived at the conclusion that the treating physician's opinion was not supported by her underlying treatment notes where the handwritten notes were "almost completely illegible"); *Hennion v. Colvin,* No. 13 CV 00268,

2015 WL 877784, at *23 (M.D.Pa. Mar. 2, 2015) ("Without a legible copy of Yarus's treatment notes, it was improper for the ALJ to assert that 'nothing' in the notes supported Yarus's RFC assessment"). [4]

In sum: it is error for an ALJ to deem illegible treatment notes as a "lack of documentation" without first attempting to contact the physician to "request legible copies of his notes . . . or an explanation of the findings contained therein." *Koppers,* 2016 WL 3136916, at *4; *Nowogurski v. Berryhill,* No. 17 CV 6476, 2019 WL 1048255, at *6 (N.D.Ill. Mar. 5, 2019) (same).

What is perhaps most troubling here is that the ALJ decided how much weight to afford Dr. Gamze's opinion without a complete picture of the psychiatrist's treatment of and interaction with Claimant. The ALJ acknowledged the difficulty in deciding how much weight to afford Dr. Gamze's assessment when the ALJ stated that since his treatment notes are largely illegible, "his assessment cannot be corroborated with his longitudinal findings and observations." (R. 38.) The ALJ's conclusion in this regard is unsound because it is possible that Dr. Gamze's assessment would be corroborated by his treatment notes if a legible copy of his notes were obtained. *See, e.g., Hennion,* 2015 WL 877784, at *23. The ALJ was not free to disregard Dr. Gamze's notes simply because they are illegible. *Id.* ("[i]llegibility . . . is not a proper basis to disregard relevant medical evidence"). The ALJ's indicated course of action when the treatment notes of a claimant's primary physician are illegible is for the ALJ to reach out to the physician

---

[4] On two other occasions, the ALJ found that Claimant's treatment was conservative in nature while simultaneously noting that Dr. Gamze's treatment notes were difficult to read. (R. 34, 36.) Again, it is unclear how the ALJ was able to determine exactly what the course of treatment was, let alone that the course of treatment was "conservative", given the illegible nature of Dr. Gamze's notes. *See Moomy,* 106 F.Supp.3d at 1226.

13

to obtain a legible copy of the notes or clarification of the notes that are available. *Supra,* at 9-12.

Instead of obtaining a legible copy of the medical records to better assess the treating physician's opinions, the ALJ relied on determinations made by consultative examiners who had little interaction with Claimant. The record establishes that Dr. Gamze had known Claimant almost nine years at the time he completed her mental RFC assessment, which weighs heavily in favor of affording his opinion great, if not controlling, weight. *See* 20 C.F.R. 404.1527(c)(2)(i). An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" by medical evidence and "not inconsistent with the other substantial evidence" in the record. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); 20 C.F.R. §404.1527(c)(2).[5] Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).

Here, it is not possible to ascertain whether Dr. Gamze's opinion is well-supported by his treatment notes or inconsistent with Claimant's treatment over the years without first obtaining legible medical records. According to the ALJ, Dr. Gamze's off task/absence assessment is somewhat inconsistent with his check mark suggesting that Claimant could maintain work tasks 90% of the day. (R. 38.) The ALJ also opines that Dr. Gamze's indication that the limitations have been in effect since 2009 are inconsistent with the consultative examiners' findings and observations. (R. 38.) Given the illegibility of much of Dr. Gamze's records, the ALJ's

---

[5] In January 2017, the SSA adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

14

statements alone do not establish substantial evidence of an inconsistency in the record such that Dr. Gamze's opinion should be discounted. Without a legible copy of Dr. Gamze's records or at least an explanation from him as to the meaning of the treatment notes in the records, it simply was not possible for the ALJ to adequately evaluate Dr. Gamze's opinions. As the Seventh Circuit has made clear, "[a]n inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

Furthermore, Claimant regularly saw Dr. Gamze approximately every two months for control over her medication from 2007 until after her date last insured. (R. 267-77; 316-29.) Instead of relying on the opinion of a physiatrist who saw Claimant regularly over the course of over at least nine years, the ALJ deferred to consultative examiners. The Seventh Circuit recently noted that, "[p]articularly when it comes to mental impairments, 'a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.' " *Mischler v. Berryhill*, -- Fed.Appx.--, 2019 WL 1299948, at *6-7 (7th Cir. Mar. 20, 2019), *quoting Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Consequently, Dr. Gamze -- a psychiatrist who has treated Claimant over a period of time and did not merely witness a "snapshot" of her condition -- was in a better position to assess her capabilities than the consultative examiners who had limited contact with Claimant.

In sum: a complete understanding of Dr. Gamze's treatment of Claimant is necessary for the ALJ to determine whether his opinions require controlling weight. On remand, the ALJ is to consider the full scope of Dr. Gamze's treatment of Claimant, with the benefit of legible medical records or clarification of the notes currently in the record, when determining how much weight to afford his opinion. Again, remand of this matter may not alter the ultimate determination

regarding disability, but it is paramount that the ALJ has a complete, legible record from the sole treating psychiatrist from which to weigh the treater's opinions and render a decision.

### 2. On remand, the ALJ is to take into consideration the other arguments raised by Claimant.

Claimant raises a number of additional arguments in her motion in support of her application for DIBs. The remaining issues, however, may be impacted on remand following the availability of legible medical records and reconsideration of weight to afford Dr. Gamze's opinions. Therefore, the Court need not address whether the ALJ's paragraph B analysis is unsupported because a new analysis may be needed following the ALJ's review. Furthermore, the ALJ's evaluation of Claimant's subjective symptoms may or may not change based on what the complete medical records reveal.

Additionally, the Court will not address whether the ALJ's RFC analysis was proper because a new RFC may be warranted. The ALJ, however, is advised to more fully address how the RFC takes into account Claimant's limitations in concentration, persistence, and pace. "Both the RFC and the hypothetical question presented to a VE must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler,* 2019 WL 1299948, at *8, *quoting O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010). The Seventh Circuit has repeatedly rejected the notion that "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) (citing *Stewart v. Astrue*, 679, 685 (7th Cir. 2009) (collecting cases)); *see also Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). Therefore, the ALJ is to ensure that the RFC properly accounts for limitations in concentration, persistence, and pace.

# CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment [12] is granted, the Commissioner's motion for summary judgment [20] is denied, and the decision of the ALJ is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order. Specifically, on remand, the ALJ must: (1) consider the full scope of Dr. Gamze's treatment of Claimant, with the benefit of legible medical records or clarification of his treatment notes that are currently in the record, when determining how much weight to afford his opinions; (2) determine whether a new RFC is necessary based on the evaluation of the complete medical records; and (3) properly account for Claimant's limitations in concentration, persistence, and pace in assessing the RFC.

**ENTERED:**

_____
**Jeffrey Cummings
United States Magistrate Judge**

**Dated: May 10, 2019**